IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| GERALD KEITH DOWNARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 322-013 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate at Talladega Federal Correctional Institution in Talladega, Alabama, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Respondent moved to dismiss the § 2255 motion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 372), the § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 363), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

A.    **Indictment**

On October 5, 2022, the government charged Petitioner and twelve co-defendants in a twenty-seven-count indictment alleging an overarching conspiracy to possess with intent to distribute and to distribute controlled substances, including 100 grams or more of heroin and fifty grams or more of methamphetamine. (See doc. no. 3.) The indictment named Petitioner in four of those counts, *i.e.*, conspiracy involving methamphetamine and heroin in count one,

methamphetamine distribution in count twelve, and illegal firearm possession in counts thirteen and fifteen. (See id.) The penalties Petitioner faced included, but were not limited to, ten years to life of imprisonment for the conspiracy charged in count one, with a possible mandatory minimum and consecutive five years for the firearm charge in count thirteen. (See doc. no. 4.) The Court appointed attorney Michon Walker to represent Petitioner. (See doc. no. 46.)

### B.    Guilty Plea

Pursuant to a written plea agreement, Petitioner pled guilty to the lesser included offense of count one, possession with intent to distribute and to distribute a quantity of methamphetamine. (See doc. no. 196 ("Plea Agreement").) In exchange, the government agreed to: (1) move for an additional one-point reduction under the Sentencing Guidelines if the Court determined Petitioner qualified for a two-point acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a), and Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; (2) recommend Petitioner be sentenced at the low end of the Guidelines range as determined by the Court at sentencing; (3) recommend to the U.S. Probation Office and the Court at sentencing that, for purposes of U.S.S.G. § 2D1.1, the offense involved at least fifty, but less than 150, grams of methamphetamine (ICE); and, (4) move to dismiss at sentencing all other Counts of the indictment pending against Petitioner. Id. at 3-4, 9; see also doc. no. 368 ("Rule 11 Tr."), p. 18. The range of 50 to 150 grams matched the weight range attributed to co-defendant Carmen Oxford, with whom Petitioner was traveling at the time of a traffic stop on April 14, 2022, that resulted in the seizure of approximately four ounces of methamphetamine. (See doc. no. 154, p. 4; doc. no. 359, pp. 10-11.) Notably, however, the plea agreement also set forth that the Guidelines calculation is

2

"based on all of [Petitioner's] relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular Counts to which [Petitioner] is pleading guilty." Plea Agreement, p. 3.

> Petitioner's plea agreement contained the following factual basis for his guilty plea:
>
> Beginning on a date at least as early as 2020 up to and including the return date of the indictment in October 2022, the precise dates being unknown, in Treutlen, Laurens, Johnson and Emanuel Counties, within the Southern District of Georgia, and elsewhere, the defendant, **GERALD KEITH DOWNARD**, aided and abetted by others known and unknown, with some joining the conspiracy earlier and others joining later, did knowingly and intentionally combine, conspire, confederate and agree with others, known and unknown, to possess with intent to distribute and to distribute a quantity of methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 846.

Plea Agreement, p. 2. With his signature on the plea agreement, Petitioner agreed he read and carefully reviewed it with Ms. Walker, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 11.

By signing the plea agreement, Petitioner also agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground (including any argument that the statute to which the defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute)" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 7. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 7-8. By signing the plea agreement, Petitioner additionally attested to his belief "that his attorney has represented him faithfully, skillfully, and diligently, and he is

completely satisfied with the legal advice given and the work performed by his attorney." Id. at 9.

At the guilty plea hearing, United States District Judge Dudley H. Bowen, Jr., found Petitioner was competent to enter a guilty plea if he so desired. Rule 11 Tr. 6-7. Petitioner testified under oath he had sufficient time to discuss his case with Ms. Walker. Id. at 7. When Judge Bowen asked Petitioner, "[A]re you entirely satisfied with your lawyer's preparation and handling of your case?" Petitioner answered, "Yes, Your Honor." Id. Judge Bowen reviewed the lesser included drug charge to which Petitioner was pleading guilty and the maximum prison term of twenty years, as well as what the government would have to prove to secure a conviction. Id. at 7-11. The prosecutor explained the difference between the original charge in count one and the lesser included offense, including removal of the mandatory minimum prison term for methamphetamine, as well as removal of heroin altogether. Id. at 8-9. Thus, the effect of pleading to the lesser included offense was to reduce the maximum penalty to not more than twenty years imprisonment, with no minimum floor. Id. at 10. Petitioner also again confirmed he had reviewed the plea agreement with Ms. Walker and understood the explanation that had been provided by the prosecutor as to the terms and consequences of his guilty plea. Id.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to be present in the courtroom during a trial, the right to present, confront, and cross-examine witnesses, and the right to remain silent. Id. at 12-13. The plea agreement Petitioner signed also delineated the

4

rights he waived by pleading guilty. Plea Agreement, pp. 8-9. Judge Bowen reminded Petitioner he was entitled to persist with his not guilty plea entered at arraignment, and no one could make Petitioner change that plea. Rule 11 Tr. 12.

Further, Judge Bowen asked Petitioner whether he had been forced, threatened or pressured into pleading guilty, to which he responded, "No, Your Honor." Id. at 15. Judge Bowen confirmed that, other than the promises the government made in the plea agreement, no one had made him any promises or guarantees to get him to plead guilty; Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 19. Particular to the Guidelines calculation, Judge Bowen also confirmed the parties had agreed the drug quantity used to calculate the Guidelines sentence involved at least fifty grams but less than 150 grams of methamphetamine in its ICE configuration. Id. at 8, 18.

Judge Bowen also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 17. Judge Bowen explained Petitioner would be waiving his right to appeal unless the sentence exceeded the statutory maximum penalty or the applicable advisory Guidelines range, or if the government filed an appeal. Id. Judge Bowen also reviewed Petitioner was giving "up any right to a collateral attack, a habeas corpus or some other complaint after [he got] sentenced about [his] conviction or sentence" except for a claim of ineffective assistance of counsel. Id.

Judge Bowen then heard a factual basis for the guilty plea from Task Force Officer ("TFO") Timothy Burriss with the Drug Enforcement Agency ("DEA"). TFO Burriss explained the government had intercepted phone calls and text messages between Petitioner and co-defendant Travis Lee Martin discussing quantities and price of methamphetamine

available for purchase by Petitioner.  Id. at 20.  After intercepting a text message between Petitioner and Mr. Martin on April 14, 2022, Laurens County Sheriff's Office conducted a traffic stop on a vehicle driven by Petitioner and in which co-defendant Oxford was a passenger.  Id. at 20-21; see also Presentence Investigation Report ("PSI") ¶ 6.  Officers found approximately four ounces of methamphetamine, "along with other things."  Rule 11 Tr. 21. At the Rule 11 proceedings of co-defendant Oxford, TFO Burriss testified these "other things" included scales, plastic baggies, and a firearm located on the driver's side that Petitioner placed in the vehicle.  (Doc. no. 359, pp. 14-15; see also PSI ¶ 8.)

Upon conclusion of TFO Burriss's testimony at Petitioner's Rule 11 proceeding, Petitioner confirmed he had no disagreement with the factual basis provided and confirmed he was guilty of, and wanted to plead guilty to, the lesser included offense of count one, consistent with the terms of his plea agreement.  Rule 11 Tr. 24-25.  Judge Bowen accepted Petitioner's guilty plea and entered it on the record.  Id. at 25.

### C.    Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-nine, Criminal History Category at I, and a Guidelines imprisonment range of 87 to 108 months.  (Doc. no. 277, PSI, ¶¶ 27, 73.)  Consistent with the plea agreement, the offense level was calculated based on DEA laboratory analysis of 122.07 grams of methamphetamine hydrochloride with a minimum purity level of 77 percent for a total of 93.99 grams of methamphetamine (actual), which means the base offense level for Guideline purposes involved at least fifty grams, but less than 150 grams, of methamphetamine (actual). PSI ¶¶ 12, 18.  The PSI also applied a two-level increase for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1), but there was a three-level reduction applied for acceptance of

6

responsibility.  PSI ¶¶ 19, 25-26.

Although the government did not object to the PSI, Petitioner raised two objections. PSI, pp. 22-23 ("PSI Addendum"); doc. no. 369, ("Sent. Tr."), pp. 3-4, 10-11.  In one objection, Petitioner argued the firearm enhancement was improper because he possessed the gun to shoot snakes and rodents at home rather than in relation to the illegal drugs found in his vehicle.  Ms. Walker announced at sentencing the firearm objection was moot, and the defense would only be moving forward with the drug quantity objection.  See PSI Addendum, Obj. #2; Sent. Tr. 10-11.

Judge Bowen addressed the remaining objection at sentencing on October 5, 2023. Petitioner argued that basing the Guidelines calculation on actual grams of methamphetamine rather than a mixture negatively impacted the calculation of his sentence.  Importantly, however, he did not phrase the objection as one to the drug quantity itself because he stipulated to this quantity in his plea agreement.  Instead, he characterized the objection as a request for a downward variance.  Id. at 7-9.  Citing guidance in U.S.S.G. § 2D1.1 to use the greater base offense level based on the mixture weight rather than the actual weight, Petitioner pointed out that his mixture weight of 122.07 grams resulted in an offense level of twenty-four while the stipulated, actual weight of 93.99 grams resulted in a base offense level of thirty.  Sent. Tr. 4. At sentencing, the probation officer explained the methamphetamine seized during the April 14, 2022, traffic stop exceeded 100 grams and tested at eighty-three percent purity with a margin of error of six percent.[1]  Id. at 6, 8.  Petitioner received the benefit of removing the entire margin of error.  Had the margin of error been included, the base offense level would

---

[1]Judge Bowen appended the lab report as Court's Exhibit No. 1 to the sentencing record. (See doc. no. 290-1.)

have been thirty as well.  Id. at 7-8.

> In opposition to Petitioner's objection, the government told Judge Bowen:
>
> Your Honor, it [ICE methamphetamine and some mixture that is three percent less pure than ICE] was mentioned [in the Plea Agreement] specifically because the government was aware that this was going to test - - at the time we drew the Plea Agreement that the lab report was done already.  So, I think, as [the Probation Officer] said, it was more than 77 percent pure, but they give them the 6 points one way or the other.  Either way, it's actual and actual or ICE are the same guideline base offense level.  So either way he was going to get a 30 whether the Court wants to consider this ICE or actual, but in addition to that, he's only being attributed with the drugs that were seized that day.  That's just one day.  This is a conspiracy where he was alleged to have facilitated multiple methamphetamine sales.  So, this was a benefit in the Plea Agreement and, again, it's the government's position that if he is contesting that, then he is breaching the Plea Agreement.

Id. at 8-9.  Treating Petitioner's objection as a request for a downward variance, Judge Bowen deferred ruling on the objection and moved to matters of extenuation, mitigation, and allocution.  Id. at 10.

Ms. Walker told Judge Bowen that Petitioner was a father of four children and owner of a handyman business that was known in the community for performing quality work. Notably, however, Petitioner had been unable to overcome his issues with substance abuse that began at a young age and had been exacerbated by witnessing a friend die in a horrific car accident.  Id. at 11.  Prior substance abuse treatment had not worked, and Petitioner requested a recommendation from Judge Bowen that he participate in substance abuse treatment and counseling while in prison.  Id. at 11-12.  Ms. Walker also again emphasized Petitioner's policy disagreements with emphasizing drug weight and quality over consideration of a defendant's status as a major drug dealer, or a low-level user like Petitioner.  She emphasized Petitioner's minor role in the conspiracy to which he was pleading guilty.  Id.  Ms. Walker also explained these arguments in detail, supported by case law, in a sentencing memorandum filed prior to

sentencing. (See doc. no. 287.) For his part, Petitioner apologized to the Court and his mother, explaining he "picked dope up for people" as "a way to make a little extra money." Sent. Tr. 13-14.

Advocating in favor of a sentence at the low end of the Guidelines range, the government argued Petitioner was, in fact, a drug dealer, as evidenced by the amount of drugs seized on the day of his arrest were not user-quantities:

> He had 1.9 grams of suspected heroin which actually tested positive as Fentanyl, a bag of marijuana with 9 grams of marijuana in it, a baggy with 19 oxycodone pills and three hydrocodone pills, a large quantity of small plastic bags, a large plastic zipper container of methamphetamine, a loaded pistol, and that's just the day that he was arrested.
>
> . . . [T]urning the history and characteristics of [Petitioner] he's been arrested more than 15 times and he only served 30 days jail.

Id. at 14-15; see also PSI ¶¶ 8, 11.

Having heard from both sides, Judge Bowen rejected Petitioner's argument he was a victim of addiction and personal use and concluded the amount of methamphetamine with which he was arrested – whether classified as ICE or actual or pure – was a trafficking / dealer quantity, and the other drugs discovered in co-defendant Oxford's purse during the arrest, while "not directly inculpatory, they are by no means exculpatory." Sent. Tr. 18-19. Thus, Judge Bowen overruled the objection, adopted the factual statements in the PSI, and sentenced Petitioner to 87 months of imprisonment. Id. at 19-20.

### D.    Post-Conviction

In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal. On the same day as sentencing, Ms. Walker and Petitioner signed a post-conviction consultation certification in which they both attested that Petitioner decided not to file an

appeal after Ms. Walker (1) explained to Petitioner the appeal process, including the right to a direct appeal, (2) advised Petitioner about the advantages and disadvantages of pursuing an appeal, and (3) inquired of Petitioner whether he wanted to file an appeal.  (Doc. no. 291.)

### E.  § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following five claims.

(1)  Ms. Walker provided ineffective assistance of counsel by:

    (a)  "misrepresenting my defense pleadings," (doc. no. 363, p. 3);

    (b)  failing to argue properly on his behalf for a correct sentence, particularly when other members of the conspiracy that "had done more than me" but received lesser sentences, (id. at 4);

    (c)  convincing Petitioner wrongly that the plea agreement he accepted was better than the first plea agreement offered by the government, (id. at 5);

    (d)  failing "to file and argue motions for the drugs" and to challenge the "constitutionality on the gun charge," (id.);

    (e)  misrepresenting to him that he had only "the day of sentencing" to file an appeal, (id.); and

    (f)  failing to argue effectively at sentencing that he was "only a[] private addict-user, not a dealer," (id.).

(2)  The 87-month prison sentence was based on an incorrectly calculated Guidelines range and resulted in a cruel and unusual sentence that violates the Eighth Amendment.  (Id. at 6.)

(3)  The Guidelines range for his sentence was based on an incorrect type of methamphetamine, resulting in a harsher sentence.  (Id.)

(4)  Petitioner should have received a downward adjustment in his Guidelines calculation because he is not a drug dealer, and other co-defendants "had higher purity levels."  (Id. at 7.)

(5)  Petitioner received an enhancement to his sentence for relevant conduct related to dismissed charges.  (Id. at 8-10.)

10

Petitioner's motion does not ask to vacate his conviction or otherwise withdraw his guilty plea; rather he seeks only a lower sentence. (Id. at 16; see also doc. no. 382, pp. 10-11 ("Downard is not withdrawing his plea of guilty or trying to prove completely of his inocense [sic] of the crime committed. Downard is only disputing his sentence.").)

Respondent filed a motion to dismiss, contending Petitioner's claims fail on the merits, are bared by the collateral attack waiver, are procedurally defaulted, or are otherwise barred by his knowing and voluntary guilty plea. (See generally doc. no. 372.) Petitioner received multiple extensions of time to respond related to providing the sentencing transcript at a correct address for Petitioner, and the matter is now ripe for disposition.

## II.     DISCUSSION

### A.     No Evidentiary Hearing Required

Petitioner requests a hearing on his § 2255 motion. (Doc. no. 363, p. 16.) However, § 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a hearing is not required "if the allegations are affirmatively contradicted by the record." Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (citations omitted).

Stated otherwise, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

11

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Rather, a petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." Griffith v. United States, 871 F.3d 1321, 1329 (11th Cir. 2017). Because Petitioner's claims are barred by his valid plea agreement, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

> **B.      Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). It is not enough to show ignorance of the law. Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*), *partially overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997). "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Id. The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent

12

or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson], 397 U.S. 759 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (*en banc*) (quoting Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (*per curiam*)). When a client pleads guilty, defense counsel "need only provide [her] client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (*per curiam*). Counsel can impart such an understanding by offering her informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508. Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular

13

facts or defenses. Chandler, 218 F.3d at 1317. "A tactical decision is ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." Davidson v. United States, 213 F. App'x 769, 770 (11th Cir. 2007) (per curiam) (citation omitted). As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann, 397 U.S. at 770.

The Supreme Court described at length the impact of a guilty plea on the Strickland deficiency analysis in Premo v. Moore, 562 U.S. 115, 125 (2011), when reversing a federal appeals court that found ineffective assistance by counsel who did not file a motion to suppress on behalf of a state defendant who pled guilty. Courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." Id. Judicial restraint is critical because "bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." Id. at 124. Furthermore, "[t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." Id. at 126.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances,

as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the

15

outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. The prejudice determination is not based on whether a petitioner would have ultimately prevailed on the specific issues underlying the ineffectiveness claim, "but instead on whether [a petitioner] would have pleaded guilty had counsel's performance not been deficient." Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (*per curiam*). In particular, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). Thus, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

### C.    Petitioner Is Not Entitled to Relief on Any of the Pre-Plea Ineffective Assistance Claims in Subparts (a), (c), and (d) in Ground One

Petitioner asserts Ms. Walker provided ineffective assistance in the pre-plea phase of the case when she: (1) misrepresented Petitioner's defense pleadings; (2) wrongly convinced

16

Petitioner that the plea agreement he accepted was better than the first plea agreement offered by the government; and (3) failed to file motions "for the drugs" and to "challenge the constitutionality of the gun charge."  These claims are barred by entry of a valid guilty plea, and in any event are devoid of merit.

  **1.  Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Subparts (a), (c), and (d) in Ground One**

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis,  the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

17

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Bowen's Colloquy with Petitioner Satisfied the Core Principles

Judge Bowen informed Petitioner in clear terms of the charge to which Petitioner was pleading guilty, and he reviewed the maximum prison term of twenty years, as well as what the government would have to prove to secure a conviction. Rule 11 Tr. 7-11. In particular, Judge Bowen specifically had the prosecutor explain the difference between the original charge in count one and the lesser included offense to which Petitioner had agreed to plead guilty, including removal of the aggravating amount of 50 grams or more of methamphetamine which would have triggered a mandatory minimum prison term, as well as removal of heroin as a controlled substance. Id. at 8-9. Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 12-13; see also Plea Agreement, pp. 8-9. Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get him to plead guilty, and Judge Bowen

confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Rule 11 Tr. 15, 19. Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 19. Judge Bowen also confirmed the parties had agreed the drug quantity used to calculate the Guidelines sentence involved at least fifty grams but less than 150 grams of methamphetamine in its ICE configuration. Id. at 8, 18.

Additionally, Judge Bowen informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Bowen confirmed Petitioner understood the maximum penalty of twenty years in prison, not less than three years of supervised release, a $1,000,000 fine, and a $100 special assessment for the charge to which he was pleading guilty. Id. at 11. Petitioner also testified he had enough time to discuss the case with Ms. Walker and was entirely satisfied with counsel's preparation and handling of his case. Id. at 7; see also Plea Agreement, p. 9 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."). Petitioner expressed no hint of dissatisfaction with Ms. Walker when he appeared before Judge Bowen.

At the Rule 11 hearing, Petitioner also admitted to the facts presented by proffer from the government as the factual basis for the plea. Rule 11 Tr. 20-22. This proffer included information concerning approximately four ounces of methamphetamine found in the car Petitioner was driving when officers conducted a traffic stop on April 14, 2022. Id. at 20-21; see also Plea Agreement, p. 4 (delineating stipulation for Guidelines calculation that "offense involved at least 50 grams but less than 150 grams of methamphetamine (ICE)"). Judge

19

Bowen confirmed Petitioner wanted to plead, and was in fact, guilty of the lesser included offense of the count one conspiracy charge.  Rule 11 Tr. 24-25.

Thus, Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea.

In sum, Petitioner has not shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.");  United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  Indeed, in his requested relief, Petitioner does not ask to withdraw his guilty but instead seeks only a new sentence. (Doc. no. 363, p. 16; see also doc. no. 382, pp. 10-11.)  As Petitioner's plea was knowing and voluntary, his claims in subparts (a), (c) and (d) of Ground One are barred.

Nevertheless, because Petitioner alleges constitutionally ineffective assistance from Ms. Walker led to the entry of his guilty plea, the Court addresses the merits of Petitioner's three pre-plea claims below.  See, e.g., Wofford, 748 F.2d at 1508 (explaining "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea"  (citations omitted)).

20

3.    **Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit**

In subparts (a), (c), and (d) of Ground One, Petitioner claims Ms. Walker "misrepresented" his defense pleadings in some unidentified way and failed to file motions "for the drugs" and to challenge "the constitutionality on the drug charge," as well as wrongly convinced him to accept the least favorable of two plea agreements offered. Most difficult for Petitioner to overcome is his prior sworn assertions to Judge Bowen he had enough time to discuss the case with Ms. Walker and was entirely satisfied with her preparation and handling of the case. Rule 11 Tr. 7; see also Plea Agreement, p. 9. These sworn assertions contradict his current claims of dissatisfaction with the preparation by Ms. Walker prior to the guilty plea proceedings.

Even now Petitioner offers no particularized information about any misrepresentation in his defense pleadings or what motions should have been filed "for the drugs" or to challenge "the constitutionality on the drug charge." Such conclusory allegations will not suffice. The Eleventh Circuit has explained "the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading' as authorized under Federal Rule of Civil Procedure 8(a)" and recognizes the Supreme Court has also observed "[h]abeas corpus petitions must meet heightened pleading requirements." Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (citing McFarland v. Scott, 512 U.S. 849, 856 (1994)).

> To properly fact plead, a petitioner must state specific, particularized facts, which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.

21

Arrington v. Warden, No. CV 117-022, 2017 WL 4079405, at *2 (S.D. Ga. Sept. 14, 2017); see also McFarland, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements.").

The requirement for fact-specific pleading applies with equal force for ineffective assistance of counsel claims. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (*per curiam*) ("Conclusory allegations of ineffective assistance are insufficient."); Williams v. United States, 457 F. Supp. 3d 1240, 1250 (M.D. Fla. 2020) ("A petitioner is not entitled to . . . habeas relief when his claims are merely conclusory allegations unsupported by specifics. . . . " (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)); Trejo v. United States, No. 2:16CV647-MHT, 2019 WL 4597256, at *4 (M.D. Ala. Aug. 15, 2019) (denying relief where petitioner provided "no specifics whatsoever as to how [counsel] performed deficiently, or how he was prejudiced as a result of their allegedly deficient performance."), *adopted by* 2019 WL 4580386 (M.D. Ala. Sept. 20, 2019); Arrington, 2017 WL 4079405, at *5 (requiring petitioner claiming ineffective assistance of counsel to connect facts to law rather than merely alleging "counsel should have done things differently"). Petitioner's vague and conclusory claim about unidentified "misrepresentations" and motions or challenges that were not filed does not entitle him to relief.

As to Petitioner's claim that the plea agreement accepted was less favorable than a prior offer, he neither explains the terms of the prior offer or provides a copy of it. As discussed above, such a conclusory claim forms no basis for relief. In any event, Respondent provides a copy, (doc. no. 372-2), argues Petitioner's understanding of the prior agreement is wrong, and explains the executed plea agreement provided Petitioner significant benefits over the first agreement. In particular, the executed plea agreement narrowed the scope of the conspiracy

by limiting it to methamphetamine rather than methamphetamine and heroin. (Cf. Plea Agreement, p. 1 with doc. no. 372-2, p. 1.) The executed plea agreement also includes an explicit agreement to recommend for sentencing purposes that the offense involved at least 50 grams but less than 150 grams of methamphetamine in ICE form; the absence of such a recommendation in the prior agreement offered less certainty and greater risk for a higher sentence. (Cf. Plea Agreement, pp. 3-4, Agreements Regarding Sentencing Guidelines, with doc. no. 372-2, pp. 3-4, Agreements Regarding Sentencing Guidelines.) Moreover, the executed agreement included a promise from the government to recommend Petitioner be sentenced at the lower end of the Guidelines range as determined by the Court, a promise not included in the first agreement. (Cf. Plea Agreement, p. 4, Low End of Guidelines Range, with doc. no. 372-2, pp. 3-4, Agreements Regarding Sentencing Guidelines.)

Moreover, Petitioner cannot meet the difficult standard for ineffective assistance of counsel, discussed in detail in Part II(B), because he has not suggested, let alone established, he would not have taken the benefit of the plea agreement and instead insisted upon going to trial. Petitioner has not identified any misrepresentation or unfiled motion, let alone explained how correction of any such misrepresentation of filing a pre-plea motion would have caused him to go to trial rather than plead guilty, changed the outcome of the case, or made a difference to his sentence. This is particularly true in light of Petitioner's attestation of guilt at the Rule 11 proceedings. Petitioner has shown neither deficient performance nor prejudice.

In sum, "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal." Harris v. United States, No. CV 410-69/CR 407-285, 2011 WL 1740702, at *5

(S.D. Ga. Apr. 11, 2011), *adopted by*, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  Petitioner is not entitled to relief on subparts (a), (c), or (d) of Ground One.

**D.   Petitioner Is Not Entitled to Relief on Any of the Sentencing Ineffective Assistance Claims in Subparts (b), (e), and (f) in Ground One**

Petitioner also asserts Ms. Walker provided ineffective assistance at sentencing when she:  (1) failed to argue properly for a correct sentence, particularly when other members of the conspiracy received lesser sentences; (2) misrepresented he had only "the day of sentencing" to file an appeal; and (3) failed to argue effectively he was "only a[] private addict-user, not a dealer."

At sentencing, Judge Bowen confirmed Petitioner had reviewed the PSI.  Sent. Tr. 2-3. Judge Bowen then painstakingly addressed Petitioner's objection in detail regarding the use of a base offense level of thirty based on purity tests conducted on the methamphetamine recovered during the April 14, 2022 traffic stop leading to Petitioner's arrest.  Id. at 4-9, 17-18.  As Judge Bowen ultimately summarized, "The amount of methamphetamine which [Petitioner] had, whether it be classed as ICE or actual or pure, was 120 grams of a mixture which may have been as high as 89 percent or may have been as low as 77 percent.  [The Probation Officer] giving him the benefit of the doubt, calls it 77 percent."  Id. at 18. Moreover, as the government explained at sentencing, the plea agreement was structured in such a way that Petitioner was going to have a base offense level of thirty regardless of whether the seized methamphetamine was ICE or actual, but it also included the benefit that only the drugs seized on the day of the arrest were attributed to him, despite the allegations he participated in a conspiracy to facilitate multiple methamphetamine sales.  Id. at 8-9.

24

Prior to imposition of sentence, Ms. Walker vigorously advocated for a downward departure from the Guidelines range, both in a written sentencing memorandum, (doc. no. 287), and in her presentation at sentencing. She emphasized his status in the community as a quality handyman and father of four whose personal drug use was the result of an addiction that began at a young age and had not been helped despite seeking substance abuse treatment. Sent. Tr. 11-12. Ms. Walker highlighted policy disagreements with emphasizing drug weight and quality over consideration of a defendant's status as a major drug dealer, or a low-level user like Petitioner. Id. She further emphasized Petitioner's minor role in the conspiracy to which he was pleading guilty. Id. When given the chance to speak directly to Judge Bowen at sentencing, Petitioner explained he "picked dope up for people" as "a way to make a little extra money." Id. at 13-14.

Petitioner's various attacks on Ms. Walker's strategy at sentencing falter out of the gate because they rely on hindsight, a practice the Eleventh Circuit has specifically explained will not suffice. Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight."). Moreover, the choice of what to focus on at sentencing is one of strategy left to the sound discretion of counsel, and to show counsel's choice of strategy is unreasonable, Petitioner must show no competent counsel would have made the choice. Strickland, 466 U.S. at 690, 691; Hatterer v. United States, No. CV 420-223, CR 419-066, 2022 WL 1612075, at *26 (S.D. Ga. May 20, 2022) (collecting cases for proposition tactical decisions of what to focus on at sentencing left to discretion of counsel cannot ordinarily form basis for ineffective assistance

claim).  Indeed, Judge Bowen specifically noted the thoroughness of Ms. Walker's arguments and presentation at sentencing benefitted his decision-making process.  Sent. Tr. 19.

Next, Ms. Walker made the very arguments Petitioner faults her for not making "properly," concerning the methamphetamine attributed to him.  See PSI Addendum, Objection # 1; Sent. Tr. 4-5, 12-13.  Ms. Walker argued for a lower sentence throughout her written and oral arguments, emphasizing Petitioner's minor role in the conspiracy and personal use of drugs based on an addiction that started at a young age.  Notably, Petitioner originally accused Ms. Walker of failing to arguing effectively that he was "only a[] private addict-user, not a dealer."  (Doc. no. 363, p. 5.)  However, after reading Respondent's motion to dismiss, he appears to concede that she raised this issue and contends in contradictory fastion that Ms. Walker should not have raised a losing argument.  (Doc. no. 382, p. 5.)  In any event, neither version of his argument entitles him to relief.

Nor can Ms. Walker be faulted for failing to raise a meritless argument with respect to Petitioner's sentence as compared to other co-defendants.  Pinkney v. Secretary, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten [her] client any relief." (citations omitted); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance claim based on failure to raise meritless issue because no prejudice can be shown).  Pursuant to the plea agreement, Petitioner agreed that, for the purpose of calculating the Guidelines range under U.S.S.G. § 2D1.1, his offense involved "at least 50 grams but less than 150 grams of methamphetamine (ICE)," which equates to a base offense level of thirty.  Plea Agreement, p. 4; U.S.S.G § 2D1.1(c)(5).  Judge Bowen carefully reviewed the plea agreement – to include a specific discussion that the drug upon which the

Guidelines calculation would be based was methamphetamine ICE – with Petitioner at the Rule 11 proceeding, took testimony from TFO Buriss as to the factual basis for the plea, and heard Petitioner testify under oath that he had no disagreement with the factual basis for plea and that he wanted to plead guilty "consistent with the terms of [his] Plea Agreement." Rule 11 Tr. 7-11, 18-22, 24-25. Ms. Walker made the policy arguments and requested a downward variance from the Guidelines range as she was able, but the plea agreement to which Petitioner agreed set the base offense level, regardless of what any other co-defendant may have had their Guidelines calculation based upon. The Court will not second guess the tactical decision on how far Ms. Walker determined she could reasonably press her argument about drug purity and weight without violating the terms of the plea agreement or diminishing her credibility before the Court.

Petitioner's argument concerning his status as a mere drug user and not dealer of methamphetamine was specifically rejected by Judge Bowen, (Sent. Tr. 17-19), and there was no basis for Ms. Walker to make any additional arguments to the contrary, beyond those in her sentencing memorandum and in-court presentation, that would not have undermined her credibility before Judge Bowen. The contention Ms. Walker should have argued for a two-level reduction to the base offense level under the minor participant provision of U.S.S.G. § 3B1.2 is also without merit. In the Eleventh Circuit, "a defendant's role in the offense may not be determined on the basis of criminal conduct for which the defendant was not held accountable at sentencing." United States v. Gruezo, 66 F.4th 1284, 1294 (11th Cir. 2023) (citation omitted). Petitioner was held accountable only for the methamphetamine and firearm he possessed on the date of his arrest, (PSI ¶¶ 18, 19), so he "may not prove he is entitled to a minor-role reduction by pointing to a broader criminal scheme in which he was a minor

participant," Gruezo, 66 F.4th at 1294.  Thus, Ms. Walker had no basis for arguing for a lesser sentence based on the argument Petitioner had done less than his co-defendants.

Finally, to the extent Petitioner argues Ms. Walker misrepresented that he had only "the day of sentencing" to file an appeal, the claim forms no basis for relief.  Petitioner does not contest Ms. Walker (1) explained to Petitioner the appeal process, including the right to a direct appeal, (2) advised Petitioner about the advantages and disadvantages of pursuing an appeal, and (3) inquired of Petitioner whether he wanted to file an appeal, as is memorialized by his signature on the post-conviction consultation certification.  (Doc. no. 291.)  He does not identify any issue he told Ms. Walker he wanted to appeal, let alone that he reasonably demonstrated an interest in filing an appeal on the day he signed the form or any time thereafter such that the Court could conclude Petitioner was prejudiced by the allegedly deficient advice about the timing of an appeal.  See Hatterer, 2022 WL 1612075, at *8.  Nor does he claim Ms. Walker ignored an instruction to file an appeal.  See Graham v. United States, No. 217-cr-2, 2021 WL 5858585, at *11 (S.D. Ga. Nov. 12, 2021) (rejecting lost appeal claim and concluding "the undisputed post-conviction consultation certification establishes [petitioner's] informed decision not to take an appeal and thwarts any claim [petitioner] makes counsel was ineffective for failing to file an appeal" (citations omitted)), *adopted by* 2021 WL 5855839 (S.D. Ga. Dec. 8, 2021), *certif. of appealability denied* 2023 WL 7457120 (11th Cir. June 28, 2023); Newham v. United States, No. 214-cr-12, 2017 WL 1823152, at *9 (S.D. Ga. May 5, 2017) (rejecting lost appeal claim based on filing of uncontested filing of post-consultation certificate), *adopted by* 2017 WL 2589584 (S.D. Ga. June 14, 2017); see also Allen v. United States, No. 16-17232-C, 2017 WL 5999039, at *5 (11th Cir. June 2, 2017) (denying COA on lost appeal claim where form filed after sentencing and signed by petitioner stated she had explicitly been told about

28

right to appeal and decided not to appeal and later assertion to contrary in § 2255 motion unsupported by any detail).  In sum, Petitioner does not offer any factual detail, let alone specific information, to contradict the post-conviction consultation form that he made an informed decision not to appeal any aspect of his case.

In sum, all of the ineffective assistance claims based on the performance of Ms. Walker at sentencing fail.  As detailed above, they are either based on an incorrect legal premise or are too conclusory and lacking in any detail to provide relief.  See Boyd v. Comm'r, Ala. Dep't of Corrs., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (*per curiam*) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)); see also Blackledge, 431 U.S. at 74 (explaining presentation after declarations made at change of plea hearing "of conclusory allegations unsupported by specifics is subject to summary dismissal").  Petitioner has not satisfied the two-part Strickland standard of deficient performance and prejudice from Ms. Walker's actions at sentencing, and none of the claims in subparts (b), (e), and (f) in Ground One form a valid basis for relief.

**E.     Petitioner Is Not Entitled To Relief on His Claims in Grounds Two Through Five**

Petitioner claims various sentencing errors in Grounds Two through Five, all of which are barred by his collateral attack waiver and are procedurally barred.  As discussed in detail below, these remaining stand-alone sentencing claims are based on alleged errors in calculating his Guidelines range, which then allegedly resulted in the imposition of an overly harsh sentence.  Notably, Petitioner does not challenge the validity of his guilty plea or otherwise ask to withdraw his guilty plea, instead asking only to be re-sentenced.  As Respondent notes:

> This is unsurprising, because a conviction on Count 1 as alleged carried a mandatory minimum term of 10 years' imprisonment, and a conviction on

Count 13 required a 5-year term of imprisonment, consecutive to any other sentence. (Doc. 4 at 1, 3-4.) His maximum exposure under the plea agreement was 20 years' imprisonment; if convicted of the offenses alleged in the indictment, [Petitioner's] maximum potential sentence was life. See 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(b)(1)(c). So understandably [Petitioner] challenges only his sentence. (See doc. no. 363 at 18-19.)

(Doc. no. 372, pp. 13-14.) In any event, there is no basis to challenge the calculation or imposition of the 87-month sentence Petitioner received after facing a potential life sentence.

### 1.    Valid Collateral Attack Waiver Bars Claims

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid and enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as

his right to collaterally attack the same on any ground other than ineffective assistance of counsel. Plea Agreement, pp. 7-8. None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum or the advisory Guidelines range as determined by Judge Bowen after reviewing the PSI, and the government did not appeal. Id. at 7. Moreover, Judge Bowen reviewed the appeal and collateral attack waiver provisions in the plea agreement during the change of plea proceedings and confirmed Petitioner understood and had agreed to the terms described. Rule 11 Tr. 17.

The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary. Likewise, as discussed above, the guilty plea itself was knowing and voluntary. Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims in Grounds Two through Five. See United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (per curiam) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver); Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (per curiam) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement); Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) (enforcing appeal waiver where challenge based on claim of ineffective assistance at sentencing).

### 2. Claims Are Also Procedurally Defaulted Because They Were Not Raised on Direct Appeal

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255

challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The actual innocence exception is exceedingly narrow in scope and must encompass factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623-24 (1998).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987). Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014) (en banc); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (per curiam).

> Section 2255 does not provide a remedy for every alleged error in conviction and sentencing. When a prisoner . . . alleges that his "sentence was imposed in violation of the . . . laws of the United States . . . or is otherwise subject to collateral attack," a district court lacks the authority to review the alleged error

"unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'"

Spencer, 773 F.3d at 1138 (citations omitted). Thus, to challenge an alleged sentencing error in his case as a "fundamental defect," Petitioner must prove he is actually innocent of his crime or that he has had a prior conviction vacated that was used to enhance his sentence. Id. at 1139. Petitioner has not alleged, let alone proven, either circumstance. Indeed, as noted above, Petitioner has specifically *not* asked to withdraw his guilty plea or otherwise claimed innocence of his charge, and he seeks only to be re-sentenced.

As also set forth above, the drug types and quantities set forth in the plea agreement, upon which the Guidelines range would be based, were discussed at length during the Rule 11 proceedings, and the within-the-Guidelines sentence was based on a *stipulated* drug type and weight range, (Rule 11 Tr. 7-11, 18; see also Plea Agreement, pp. 3-4, 9). Judge Bowen also specifically rejected Petitioner's arguments regarding his status as a user, rather than dealer, of drugs. Sent. Tr. 18-19. As to Petitioner's claim in Ground Five regarding an alleged improper enhancement for the dismissed gun charge, although that claim was originally raised as an objection to the PSI, it was dropped at sentencing. See PSI Addendum, Obj. #2; Sent. Tr. 10-11. Nor did Petitioner raise his claims in Grounds Two through Five on direct appeal. As discussed in detail above, Petitioner validly waived his right to a direct appeal. As these sentencing claims were not raised on direct appeal, they are procedurally defaulted.

There has been no valid argument, let alone establishment, of cause and prejudice for the procedural default, and Petitioner has not claimed he is actually innocent of the charge to which he pled guilty. Indeed, as discussed herein, there is no valid ineffective assistance claim to excuse the default, and Petitioner's requested relief is not vacatur of his conviction but rather

33

re-sentencing.  Moreover, as none of these sentencing claims could be validly construed as constitutional, jurisdictional, or presenting an error so fundamental as to have resulted in a complete miscarriage of justice, they are not reviewable in these § 2255 proceedings.  See United States v. Addonizio, 442 U.S. 178, 186 (1979) ("There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid.")

### 3.    Even if the Claims Were Not Barred, They Are Without Merit

In his original § 2255 motion, Petitioner asserts in Ground Two that his 87-month sentence amounts to cruel and unusual punishment which violates the Eighth Amendment. Petitioner asserts a correct Guidelines calculation should have resulted in a Guidelines range of thirty-three to forty-one months, (doc. no. 363, p. 6), or alternatively, thirty-seven to forty-six months, (id. at 11).  Thus, he implies anything other than a sentence based on the calculation he believes to be correct is cruel and unusual.  As Respondent points out, however, courts routinely have approved of much harsher sentences for possession and distribution of illegal narcotics.  See Harmelin v. Michigan, 501 U.S. 957, 961, 994 (1991) (finding mandatory life sentence for first time felony offender guilty of possessing 672 grams of cocaine not violative of Eighth Amendment); United States v. Gonzalez, 414 F. App'x 189, 204-05 (11th Cir. 2011) (finding no Eighth Amendment violation for twenty-year sentence imposed on defendant with relatively minor prior drug offense).  Moreover, Petitioner faced a potential twenty-year sentence for the charge to which he pled guilty, (Rule 11 Tr. 7-8), but received a sentence of less than half that amount.

In a subsequent reply, Petitioner concedes his claim in Ground Two is actually "based on the same grounds as claim 3, 4, and 5," (doc. no. 382, p. 6), and he cites a non-binding case from the District of New Mexico in which the sentencing judge refused "to punish a low-level courier with a sentence intended for high-level criminals." United States v. Ibarra-Sandoval, 265 F.Supp.3d 1249, 1250 (D.N.M. 2017). Yet Petitioner still fails to provide any factual or valid legal support for his claim that the 87-month sentence he received, regardless of any alleged errors in the Guidelines calculation, is violative of the Eighth Amendment. In any event, as discussed above, Ms. Walker vigorously argued the policy argument at sentencing that the type of drugs upon which Petitioner's sentence was based, which resulted in use of a higher base offense level, coupled with Petitioner's low-level role in the conspiracy, should result in a downward variance from the Guidelines range. Judge Bowen flatly rejected those arguments based on Petitioner's agreement to the type and quantity range of drugs as spelled out in the plea agreement and a determination that the amount of methamphetamine and other drugs discovered on his co-defendant, with whom he was travelling at the time of his arrest, was a trafficking /dealer quantity, not for personal use. Sent. Tr. 18-19. Petitioner's self-serving, after-the-fact characterization of his role in the conspiracy, as well as reliance on out-of-circuit precedent that may take a different view of actual versus mixture methamphetamine, does not entitle him to relief on Ground Two.

Grounds Three and Four are a rehashing of the arguments discussed at length above regarding the type of methamphetamine, actual or ICE formulation as opposed to a mixture, upon which his Guidelines calculation was based. Petitioner agreed to a stipulated quantity range and type of methamphetamine for purposes of calculating his sentence. Plea Agreement,

p. 4.  The issue of drug quantity and type was addressed multiple times by Judge Bowen at the change of plea proceedings, and Petitioner repeatedly told Judge Bowen he understood the terms of the agreement.  Rule 11 Tr. 8-10, 18.  Similarly at sentencing, the type of drugs, as well as purity of the methamphetamine, used to calculate the Guideline sentence was argued vigorously and extensively, as was the issue of whether Petitioner was a drug dealer or simply a drug user.  Judge Bowen rejected the very arguments Petitioner now makes.  Sent. Tr. 18-19.  Petitioner offers no new information or binding case law to change the analysis.  There is no merit to the claims in Grounds Three and Four.

As to Ground Five, Petitioner challenges the two-level enhancement for possession of a firearm, citing Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny.  According to Petitioner, he should not have received a two-level Guideline enhancement because "prior crimes" must be determined by a jury.  (Doc. no. 363, p. 8.)  Moreover, the Second Amendment protects his right to carry a firearm as part of his way of life because of his proximity to the Oconee River and swampland, (id.; doc. no. 382, pp. 8-9; doc. no. 419, p. 3), and because the illegal firearm possession charges in counts thirteen and fifteen of the indictment were dismissed as part of the plea agreement, his sentence should not have received the two-level firearm enhancement.  While acknowledging under Apprendi, 530 U.S. at 490, any contested fact other than the fact of a prior conviction increasing the penalty for a crime above the prescribed statutory maximum must be proven to a jury beyond a reasonable doubt, Respondent maintains that post-Apprendi, any fact not admitted by a defendant or proven beyond a reasonable doubt may "still be considered as relevant conduct under the advisory Guidelines if proven by a preponderance of the evidence." (Doc. no. 372, p. 24 (citing United

36

States v. Ghertler, 605 F.3d 1256, 1268-69 (11th Cir. 2010)); see also United States v. Brooks, 112 F.4th 937, 946 (11th Cir. 2024) (explaining under U.S.S.G. § 1B1.3, sentencing court may consider uncharged or dismissed conduct proven by preponderance of evidence to determine Guidelines range).

As an initial matter, Petitioner offers nothing, and the Court is not aware of, any case law construing the Second Amendment as having any impact on a sentencing court's consideration under the Guidelines of relevant conduct with respect to possession of a firearm in connection with illegal drugs. As U.S.S.G. § 2D1.1(b)(1) explains, the enhancement applies if a firearm was "possessed." Application Note 11(A) to U.S.S.G. § 2D1.1 states, "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." The enhancement applies if the government establishes by a preponderance of the evidence "either (1) that a 'firearm was present at the site of the charged conduct,' or (2) 'that the defendant possessed a firearm during conduct associated with the offense of conviction.'" United States v. Montenegro, 1 F.4th 940, 946 (11th Cir. 2021) (citation omitted). Thus, the dismissal of Petitioner's indicted firearms charges as part of the plea agreement does not mean the firearm could not be considered as relevant conduct to the drug charge of which he was convicted by his own guilty plea.

Moreover, although the government must show a nexus between the firearm and the drug crime, it is not required to prove the firearm was used in the facilitation of drug distribution but rather the "mere presence [of the firearm] during the drug offense is sufficient." Id. In other words, "[e]vidence of 'proximity between guns and drugs, without more, is

sufficient to meet the government's initial burden under § 2D1.1(b)(1).'" Id. (citation omitted). Once the government meets its initial burden, then the defendant must shoulder the heavy burden of showing "that a connection between the weapon and the offense was clearly improbable." Id. (citing United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).

Here, Petitioner stakes his claim of an improper enhancement to having the right to carry a firearm for protection because he lived near a river and swampland. However, the record establishes the firearm was present at the site of the charged conduct, *i.e.*, in the vehicle which Petitioner was driving and in which approximately four ounces of methamphetamine "along with other things" were found. Rule 11 Tr. 21; PSI ¶ 19. And although Petitioner contests the reason for the presence of the firearm in the vehicle on the day of his arrest, he does not dispute the presence of the gun or the drugs. Even if the Court were to assume Petitioner exercised his Second Amendment right - when drugs were not present - to carry a firearm on other occasions because he lived near a river and swampland, his conclusory assertion about the purpose of having a firearm in the car with the drugs forming the basis of the charge to which he pleaded guilty does not satisfy Petitioner's heavy burden of showing a connection between the firearm and the drugs in the vehicle was clearly improbable. As the government only need prove eligibility for the enhancement by a preponderance of the evidence, United States v. Kinard, 472 F.3d 1294, 1298 (11th Cir. 2006) (*per curiam*), Ground Five forms no basis for relief.

III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 372), the § 2255 motion be **DISMISSED** without

38

holding an evidentiary hearing, (doc. no. 363), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 11th day of March, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

39